UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE STOFFAN | : | |
| ALANA STOFFAN | : | |
| PLAINTIFFS | : | |
| V | : | Case No.: 3:11-cv-01630-AWT |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | July 12, 2013 |
| DEFENDANT | : | |
| | : | |
| | : | |

-------------------------------------------------------

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

The plaintiffs Wayne and Alana Stoffan, through their undersigned counsel, respectfully

submit this memorandum of law in opposition to the Motion for Summary Judgment.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

1

TABLE OF CONTENTS

INTRODUCTION     . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4


STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . .4

A. SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . .11

ARGUMENT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

B. ISSUE 1
Whether the Court should grant Summary Judgment to SNET on Plaintiff's ADA and CFEPA
claims?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    1. SNET terminated plaintiff to reduce sick time, and protect company image, claim of
    theft of de minimis property was pretextual . . . . . . . . . . . . . . 14

  a.  Plaintiff disabled withing meaning of the ADA . . . . . . . . . 15

  b.  Plaintiff will establish that Mr. Chantlos harbored discriminary animus toward plaintiff
      based on his disability.. . . . . . . . . . . . . . . . . . . . . . . . . . .  20

  c.  Progressive discipline was a constant through-out plaintiff's career and was required
      pursuant to company policies.. . . . . . . . . . . . . . . . . . . . . . 20

  2.  SNET had an illegitimate, illegal and discriminatory business reason for terminating
      plaintiff's employment. .. . . . . . . . . . . . . . . . . . . . . . . . . .  . . . 21

  3.  Defendant ignores and misconstrues plaintiff's request for accommodation. . . 22

C. Plaintiff's intentional infliction of emotional distress claim does not fail, because the record has
evidence of extreme and outrageous conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

D. Plaintiffs's breach of contract claims should not fail not an at-will employee, good cause
required for termination.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

E. Whether there is a genuine issue of material fact concerning plaintiff's unjust enrichment
claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        31

2

1. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

2. Plaintiff claims he is entitled to his bonus after he was terminated . . . . . . . . . . .32

F.   Plaintiff, Alana Stoffan's loss of consortium claim does not fail because there is a legally
     sufficient intentional infliction of emotional distress claim . . . . . . . . . . . . . . . . . . 33

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

## INTRODUCTION

The leadership of Southern New England Telephone Company ("SNET"), U-Verse department, in its ongoing effort to improve its internal performance ratings, and its public image, devised a plan to terminate Wayne Stoffan because there was zero tolerance for his disabilities. The defendant chose not to continue to keep Wayne Stoffan on staff not only because of his continuing complications with his health, and the costs associated with that, but also because of the image he portrayed by using a handicapped placard in company vehicles.

## STATEMENT OF FACTS:

**Career Employee;**

The plaintiff, Wayne Stoffan, ("Stoffan") began working at Southern New England Telephone Company ("SNET") in August 1995. (Exhibit 1a)(Stoffan affid. para. 1)  He signed a contract to work as a temporary lineman for three months, and then his position turned into a permanent one pursuant to the agreements.  (Exhibits 1a & 1b)   Mr. Stoffan loved his job and gave it his best effort. (Stoffan affid. para. 6).  Mr. Stoffan's enthusiasm for his position and his commitment to SNET was reflected in the praise that he received from customer's, and in the recognition he received from SNET of his outstanding performance. (Exhibits 2a-2m).

After working as a lineman for a number of years, Mr. Stoffan was promoted to management. (Stoffan affid. para. 4) He was considered an expert in the DSL Department. (Stoffan affid. para. 4 ) Mr. Stoffan's job would consist of  managing crews of technicians and

4

their vehicles, ordering parts and supplies for the work orders and for the technicians themselves. (Stoffan affid. para. 4 )  Along with imputing and compiling data into the SNET computers, Mr. Stoffan would communicate with the crews that he supervised how to install the DSL, the company procedures regarding safety, and policy. (Stoffan affid. para. 4 ).  In 2008, I was transferred to the U-Verse department. (Stoffan affid. para. 4).  Mr. Stoffan's  work schedule would include weekends and holidays.

**Car Accident**:

In 2005, while leaving the SNET Stratford garage on a Saturday, after getting his crew set for the day's work, Mr. Stoffan was the victim of a rear-end car-accident. (Stoffan affid. para. 7 )  Mr. Stoffan suffered a number of injuries but suffered significant injury to his back. (Stoffan affid. para. 7 )  The accident caused Mr. Stoffan to suffer from pinched nerves in his spine. (Stoffan affid. para. 7) In order to get relief from the pain, Mr. Stoffan underwent spinal fusion surgery in 2006. (Stoffan affid. para. 7 )  Despite having such operation to correct his spine and reduce his pain, Mr. Stoffan still needed to take a number of pain medications.  (Stoffan deposition p. 9, line 3 to p. 12, line 3) Mr. Stoffan also had other health issues to which he was prescribed medication. (Stoffan deposition p. 12, line 4 to line 8; p. 14, line 20 to p. 15, line 24)(Dr. Masone deposition p.86, line 11 to 88, line 23).

**First Request for Accommodation:**

Mr. Stoffan understood that SNET had a policy prohibiting the taking of prescriptions while at work. (Stoffan affid. para. 9 )(Exhibit 3a) At times Mr. Stoffan's back pain was so excruciating, that he knew when he returned to work that he would have to take pain medication during working hours. (Stoffan affid. para. 9) Mr. Stoffan advised his manager at the time, Butch

Haxhi of his need to take medications to alleviate his back pain. (Exhibit 3a). Mr. Stoffan also

requested from his manager, Butch Haxhi, an accommodation to be able to leave work, as needed

to take his medications and go home and rest as necessary. (Exhibit 3a).

**Department Transfer:**

Mr. Stoffan was transferred to the U-verse department, and had a new manager Dan

Chantlos. (Exhibit 3a) Dan Chantlos became aware of Wayne's need to take pain medications

during working hours, and had a confrontation with Wayne on whether or not he followed

SNET's procedure on disclosure. (Stoffan affidavit para. 13 /Exhibit 3a) SNET's procedure

required an employee to notify management of his/her need to take pain medications and/or

prescriptions during working hours(Exhibit 3a). Someone at the company checked with Butch

Haxhi as to the veracity of Mr. Stoffan's claimed disclosure (Exhibit 3a).

**Handicapped Parking Permit:**

After the car accident, Mr. Stoffan would use a handicapped parking permit in the SNET vehicle

he was driving. (Stoffan affid. para. 15, Exhibit 9 ) Mr. Stoffan endured discouraging and

disparaging remarks from Dan Chantlos and other SNET employees when he used the

handicapped parking permit. (Stoffan affidavit para. 15 ).

**Sick Time: FUNCTIONS: ability to walk/sit/concentrate:**

After the car accident, the number of doctors Mr. Stoffan needed to manage his health

issues increased considerably. (Stoffan affid. para. 10) The number of doctor visits per month

increased considerably during working hours. (Stoffan affid. para. 10 ) Mr. Stoffan needed

doctor's to manage his injuries from the car accident and other health issues. (Stoffan depos. p.

165, line 20 to p. 170, line 24)( Dr. Mason depos. p.86, line 11 to 88, line 23) (Exhibit 5a). Mr.

6

Stoffan had 12 appointments in 2009 with Dr. Brennan alone (Exhibit 5c). Mr. Stoffan's back injury caused him to be disabled with pain. The pain in his back, "fluctuates from a 2 to a 9, averages a 5, [he is] never without pain. Pain is worsened with coughing, sitting, sneezing, and standing particularly if sitting or standing for prolonged periods." (Exhibit 5a)

**Hostile Work Environment**:

On occasion, Mr. Stoffan would need to go home and rest if his back pain was too severe to work. (Stoffan affid.t para. 9) He would follow SNET's procedure and ask his manager, Dan Chantlos, for permission to leave to either go home or to go to a doctors's appointment. (Stoffan affid. para. 11 ) Every time he asked to leave for either a doctors appointment or to take sick time, Dan Chantlos would instruct him to keep his cell phone on. (Stoffan affid. para. 11 )(Stoffan depos. p. 286, line 17 to p. 288, line 10) Therefore, Dan stated, "technically, he would be still working". (Stoffan affid. para 11 ) Mr. Stoffan understood that to mean that he would expected to answer any SNET calls that came in which he did. (Stoffan affid. para. 11 ) For example, Mr. Stoffan would receive calls from the technician's out in the field, and he would have to assist them with any problem they would have on an installation. The reason that Mr. Stoffan was required to answer his cell phone during his requests for time off for doctors appointments or sick time was because SNET was trying to reduce its employee sick time by 10%. (Exhibit 7b, para. 21 and 8d) The statistical grouping of such sick time data were calculated by department. (Exhibit 8b) Therefore, Dan Chantlos could improve his U-Verse department's sick time rating if his subordinates, such as Mr. Stoffan, kept his cell phone on during working hours (Exhibits 8d &8c). (Stoffan affid. para. 12). Mr. Stoffan was threatened to be terminated prior to the claimed theft issue. (Stoffan depo. p. 283, line 12 to 286, line 16).

7

**Overloaded workload:**

Dan Chantlos put additional undue pressure on Mr. Stoffan in an effort to overwhelm him (Stoffan affidavit para.  ). He knew of Mr. Stoffan's back injury. (Stoffan depo. p. 210, line 22 to p. 211, line 11). First, he increased his work assignments. For example, he increased the number of his consecutive working days, scheduled him to work most holidays, and increased his crew from 15 technicians to 20 to 30 technicians in an effort to unduly stress him (Masone deposition p. 76, line 1 to p. 77, line 22) (Exhibit 6b, 5b, & 7b para. 25). Crew means a manager's responsibility for technicians, trucks, tools, and supplies for the jobs for the day. Responsibilities also include monitoring vehicle registrations/emissions along with administrative work. (Stoffan affid. para. 4) Dan Chantlos created such a hostile environment for Mr. Stoffan that it had a psychological impact him (Masone deposition p. 76, line 1 to p. 77, line 22)(Exhibit 11). Requiring him to work a number of consecutive days straight (Exhibit 6b & 5b).  Mr. Stoffan was so overwhelmed that he was referred by his Primary Care Physician, ████████████████████ ████████████████████████████. (Masone deposition p. 76, line 1 to p. 77, line 22)(Exhibit 11).

**Transfer to Stamford Garage/Second Request for Accommodation:**

Mr. Stoffan lives in Trumbull, Connecticut. (Stoffan affid. para. 16) Dan Chantlos transferred Mr. Stoffan to the Stamford Garage because he claimed that the crews in Stamford needed better managment. (Stoffan affid. para. 16)(Stoffan depos. p. 167, line 19 to p. 168, line 7).  Mr. Stoffan protested the assignment because it was too far.(Stoffan deposition p. 251 line 4 to 252, line 10 )The assignment  increased the driving time to work each way because he had to sit

8

in the bumper to bumper commuter traffic from his home in Trumbull to the SNET Stamford

garage. (Stoffan affid. para. 16) He had to drive southbound on either the Merritt Parkway or I-

95, and be at the garage before 7 a.m. for the morning conference call. The additional driving

time requiring him to sit longer irritated his back and caused him pain. (Stoffan affid. para. 16)

Mr. Stoffan discussed this problem with Dan Chantlos at the time of the assignment. Mr. Stoffan

suggested other manager's to Dan Chantlos who were competent for the work assignment but his

request for an accommodation was ignored.   (Stoffan affid. para. 16 )(Stoffan deposition p. 167,

line 19 to p. 168, line 7).

**Repair to Uncle's Television Service:**

Mr. Stoffan received a call from his Uncle that his television service needed repair.

(Stoffan, affid. para. 18)  He went to his Uncle's home in Monroe in an effort to quickly repair the

service. (Stoffan, affid. para. 18)  He sought to accommodate his Uncle who is elderly, an

epileptic, and lives alone. (Stoffan, affid. para. 18)  Television is an important part of his Uncle's

life. Mr. Stoffan also knew that there had been a prior call recently to repair the U-verse service,

and believed that he could possibly fix it easily and avoid what is called a "repeater" call.

(Stoffan, affid. para. 18)  A "repeater" call is a SNET term which would blemish the record of the

technician who was last at the Uncle's property for the television repair. (Stoffan, affid. para. 18)

It was ingrained in all the employees not to hurt the performance numbers (Exhibit 8c).

**Equipment/supplies left in Uncle's barn:**

The day that Mr. Stoffan went to his Uncle's to repair the television service he was driving

a SNET/AT&T open bed pick-up truck. (Stoffan affid. para. 18) In the bed he had a number of

bags carrying miscellaneous hand tools, telephone tools, cable, and lights (Stoffan deposition p.

9

252, line 14 to p. 253, line 8). Mr. Stoffan was transporting the items to the New Haven garage to be distributed onto the 20 trucks there. The tools were from the Stamford Garage (Stoffan deposition p 253 line 17 to 25) . Mr. Stoffan put the items in his Uncle's barn because of inclement weather and he did not want the items to get ruined (Stoffan affid. para. 19). He put the items in the barn covered with a tarp because the barn is a shed open on one side. (Stoffan, affid. para. 19) He left the tools there and forgot about them (Stoffan deposition p. 252 line 14 to p. 254, line 25).

**Asset Investigation:**

Mr. Stoffan was called by Harry Bermus and asked about the tools and missing items a number of months later. He was not sure what tools he was being asked about, and where he would have left them when he was questioned by Mr. Bermus. Thinking-out-loud by talking to Mr. Bermus he considered that maybe they were at the Stamford Garage, or his home, then recalled the items were left at his Uncle's barn. He immediately agreed to take Mr. Bermus to retrieve the items at his Uncle's barn in Monroe. Upon arrival at the barn, all items were as they were left and they were given to Mr. Bermus. Mr. Stoffan and Mr. Bermus returned to the SNET New Haven office. Mr. Stoffan was asked to return his SNET identification, keys and other company property. Mr. Stoffan was told to go home and wait to see what would transpire.

**Exit Interview**:

Mr. Stoffan was called back two weeks later by Dan Chantlos. He entered the conference room and Dan Chantlos was there with a person from Human Resources. Dan Chantlos gave him the State of Connecticut Unemployment Claim form paperwork and asked him "any questions". No other comments were made and Mr. Stoffan left.

10

**SNET Policies:**

SNET has its own policies pertaining to theft of company property (Exhibits 1c, & 7a, para 15). During Mr. Stoffan's career with SNET, whenever an inventory was required employees would have notice of the inventory to prepare for it to get it completed. (Stoffan affid. para. 23, 24  )  All equipment ordered by Mr. Stoffan was reviewed by his manager, Dan Chantlos. (Stoffan affid. para. 20 ). All equipment ordered comes from a company warehouse where the items are stored. In addition to ordering capabilities, Mr. Stoffan was given a company credit card. (Stoffan affid. para. 21) Tools were often misplaced or lost on jobs. SNET had a tool miscellaneous lost tool replacement form. (Exhibit 4b )As a matter of course, technicians often borrowed tools/supplies from one employee to another as needed or for personal purposes (Stoffan affid. para. 22 ).

**SUMMARY JUDGMENT STANDARD OF REVIEW:**

A district court may grant summary judgment only if the evidence viewed in the light most favorable to the non-movant, presents no genuine issue of material fact. Samuels v Mockry, 77 F.3rd 34, 35 (2nd Cir. 1996), and the movant is entitled to judgment as a matter of law, see Anderson v Liberty Lobby, Inc, 477 U.S. 242, 248; 106 S.Ct 2505; 91 L. Ed. 2d 202 (1986).  The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant, see Quaratino v Tiffany & Co., 71 F.3rd 58, 64 (2nd Cir. 1995). "Weighing of the evidence or making credibility determinations are prohibited with a summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party. Keweenaw Bay Indian Comm. v Rising, 477 F.3rd 881, 886 (6th Cir. 2007).

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" Viergutz v Lucent

11

Technologies, Inc., 375 Fed. Appx. 482, 485 (6th Cir. 2010)(citing Fed. R. Civ.P. 56(e)(2)).
Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in
this rule - set out specific facts showing genuine issue for trial." Id. (Citing Fed. R. Civ. P.
56(e)(2)).

Summary judgment is generally disfavored in employment cases where the employer's
"intent is at issue". Gallo v Prudential Residential Servs., Ltd P'ship, 22 F. 3d 1219, 1224 (2d.
Cir. 1994) "Because writings directly supporting a claim of discrimination are rarely, if ever,
found among an employer's corporate papers, affidavits and depositions must be carefully
scrutinized for circumstantial proof which, if believed, would show discrimination. Gallo at 1224.

## ARGUMENT:

## B. ISSUE ONE:

Whether the Court should grant Summary Judgment to SNET on Plaintiff's ADA and CFEPA
claims?

## SHORT ANSWER: No.

The defendant contends that Plaintiff cannot prove that he has a disability entitled to
protection under the ADA or that he has suffered and adverse employment action (termination,
hostile work environment) because of his alleged disability. The defendant's position is without
merit.

Under the ADA , employers are required to reasonably accommodate disabled individuals,
unless the accommodation imposes an undue hardship. 42 U.S.C. 12112(b)(5). Failure for an
employer to reasonably accommodate an employee with a disability is unlawful discrimination
under the ADA. Id.; " In order to establish a prima facia [case] of disability discrimination under

12

the ADA for failure to accommodate, a plaintiff must show that:(1) {he or} she is disabled within the meaning of the Act; (2){he or} she is otherwise qualified for the position, with or without reasonable accommodation; (3) {his or} her employer knew or had reason to know about her disability: (4) {he or} she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." DiCarlo v Potter, 358 F.3d 408; 420 (6th Cir. 2004).

Mr. Stoffan is disabled under the ADA because of his lower back injury causes him such pain it effects his ability to function as an average person does to sit, walk, and concentrate. (Exhibit 5a) He also has Rhumatoid arthritis, diabities, and high blood pressure. Mr. Stoffan was qualified for his position because he had 15 years of work experience with SNET. He also held a managerial position for a number of years prior in the DSL department. (Stoffan affid. para. 2 & 4). SNET had a record of Mr.Stoffan's disability when he notified his prior manager of his need to take pain medication. (Exhibit 3a) Dan Chantlos, also questioned Mr. Stoffan whether he had notified the company of his need to take medications. (Stoffan deposition p. 165, line, 20 to p. 166, line 1) (Exhibit 3a) Which he did notify. Mr. Stoffan requested a number of accommodations such as being allowed to go home when his pain was too much to bear. (Exhibit 3a) He would ask to go to doctor's appointments. When he requested the time off to go home or to doctor's appointments he was told to leave his cell phone on and was expected to answer business calls for the company or answer technician's questions who were out in the field. (Stoffan affid. p. 11). When he asked Dan Chantlos not to transfer him to the Stamford garage. (Stoffan deposition p. 167, line 19 to p. 168, line 7). SNET failed to provide Mr. Stoffan with a reasonable accommodations for sick and down time by requiring Mr. Stoffan to answer his cell phone while home sick or at a doctor's appointment. (Stoffan affid. p. 11) SNET failed to provide

a reasonable accommodation when Mr. Stoffan requested **not** to be transferred to the Stamford garage when there were more qualified managers available to do the job. (Stoffan deposition p. 167, line 19 to p. 168, line 7).

1. **SNET terminated plaintiff to reduce sick time, and protect the company image.  The claim of theft of de minimis property was pretextual**. The tools that are alleged to be stolen were "minor tools" which are routinely replaced by the defendant. (Exhibit 4c) The defense is creating an issue to disguise the real purpose of Mr. Stoffan's termination. He was simply the subject of discrimination because of his disabilities. The defendant did not want Mr. Stoffan driving their company vehicles using a handicap parking permit (Exhibit 9). Use of the handicap parking permit in AT&T vehicles did not fit the global image the defendant sought to portray. Mr. Stoffan was ridiculed and pressured from using them. (Stoffan affidavit para. 15) Mr. Stoffan was becoming a burden to his manager, Dan Chantlos.  Mr. Stoffan by calling Dan Chantlos weekly, or sometimes twice a week, to request relief from duty to either go to his doctor's appointments or to go home because he did not feel well was not tolerated by Dan Chantlos.(Stoffan affid. para.11)  Dan Chantlos instructed Stoffan to keep his cell phone on, and Stoffan was expected to answer any and every call.(Stoffan affid. para.11) This was stated each time Stoffan called out sick or needed to go to a doctor's appointment. (Stoffan affid. para.11 ).

Dan Chantlos put pressure on Stoffan to make his work life so miserable that he would become overwhelmed and quit. (Exhibits 5b, 5c, 6b & 11) Dan Chantlos substantially increased Stoffan's responsibilities by increasing the number of trucks and crew he was responsible for and the hours he worked. (Stoffan affid. para. 14) (Exhibit 7b para. 25). Chantlos assigned him to the

14

Stamford Garage when he knew the longer commute would cause Stoffan pain in his back from

sitting in the vehicle so long. (Stoffan affid. para 16) The longer commute aggravated his back

pain. (Stoffan affid. para. 16) Mr. Stoffan requested an **accommodation** that he not be sent to the

Stamford garage because of his back pain and told Chantlos other managers were just as

competent and could go to Stamford instead of him. (Stoffan affid. para. 16). Mr. Stoffan's

request was denied. (Stoffan deposition, p 167, line 19 to p. 168, line 7) (Stoffan affid. para. 16 )

Stoffan communicated this problem to his pain management physician, Dr. Brennan. (Exhibit 5c )

Mr. Stoffan did not intend to take the tools. Mr. Stoffan forgot that they were there.

Stoffan told this to Chantlos and Bermus. (Stoffan affid. para. 19 ) SNET had an ongoing policy

to reduce sick time. (Exhibit 8d & 7b para. 21) Employee job performance numbers were

analyzed on a daily basis. (Exhibits 8a, 8b) Managers were directed by Chantlos to code

inaccurate job performance data so it would not hurt the overall performance data. "Hurt the

numbers" (Exhibit 8c)

**a. Plaintiff is disabled within meaning of ADA:**

The ADA defines a disabled person as an individual who:

-Has a physical or mental impairment that substantially limits one or more major life
activities;

-Has a record of such and impairment; or

-Is regarded as having such an impairment. 42 U.S.C. 12102 (2).

The facts can and often do fit within more than one of the three definitions of disability. Bragdon

v Abbott, 524 U.S. 624; 118 S.Ct. 2196 (1998).

15

**Three Step Analysis**:

For the court to determine whether the plaintiff has a disability under 42 U.S.C.

12102(2)(A)-a physical or mental impairment that substantially limits a major life activity, is to

identify the physical or mental impairment that forms the basis of the disability. The second step

is to identify the life activities that are affected by the impairment. Identifying which life activity

is affected includes a determination of whether or not the affected life activity is a "major" life

activity. The final step in the analysis is an assessment of the degree to which the life activity is

affected by the impairment that must limit the major life activity in some way. Bragdon v Abbott,

524 U.S. 624, 118 S.Ct. 2196, 2202-03 (1998).

American with Disabilities Act Amendments Act of 2008 "ADAAA", effective January 1,

2009, provides that the term "disability" should be construed broadly. 42 U.S.C. 12102(4). The

first step is to establish a disability is proof of the impairment. Proof of the impairment may be

adduced from the individual himself, describing the fact of the impairment, or from health care

providers who have diagnosed the condition or identified the impairment in the individual. Mr.

Stoffan describes his disability at the time of his employment as having a back condition {needed

to have an operation to replace two discs his back}, rheumatoid arthritis, carpal tunnel and

diabetes and needed to take medication for these conditions and the pain. (Stoffan deposition p.

168, line 11 to 170, line 24). His doctors, Dr. Masone and Dr. Brennan have also diagnosed him

with a disabilities.  Dr. Brennan diagnosed Mr. Stoffan's lower back pain as so severe it effects

Mr. Stoffan's ability to sit, stand, and concentrate. (Exhibit 5a).

The second step, is to identify the life activity affected by the impairment. To be a

disability, the impairment must substantially limit a major life activity. 42 U.S.C. 12012(A) The

16

Supreme Court has held that to be substantially limited an impairment must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives," and the impairment must be permanent or long term. Toyota Motor Manufacturing v Williams, 534 U.S. 184; 122 S.Ct.681, 691 (2002) Major life activities are those basic activities that the average person in the general population can perform with little or no difficulty. Major like activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. See 29 C.F.R. 1602. The list in the regulations is a representative list of major life activities, and an exclusive list. Bragdon v Abbott, 524 U.S. 624; 118 S.Ct. 2196, 2202 (1998).  Mental and emotional processes, such as thinking, concentrating, interacting with others and reading are major life activities.  EEOC Compliance Manual 902.3(b)

The activity need not be performed daily, weekly, or monthly to be considered significant. The only requirement is that the activity be comparatively significant or important. Toyota Motor, Mfg. v Williams, 534 U.S. 184, 122 S.Ct.681 (2002). To the average person to sit, walk or stand for periods of time without pain is significaant.

When an impairment "substantially limits" it means that the individual is:

-Unable to perform a major life activity that the average person in the general population can perform; or

-S/He is significantly restricted as to the condition, manner or duration under which the individual can perform a particular life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. 1630.2(j)(l).

17

A person is disabled because he is unable to perform the major life activity of walking, as compared to the average person in the general population. An average person can walk easily, frequently, upright and without debilitating pain. Even if for arguendo, the defense claims that Mr. Stoffan is not substantially limited in walking because he was not totally unable to walk. Nevertheless Mr. Stoffan is at least significantly restricted in the life activity of walking because the back pain, and rhuematoid arthritis significantly restricts the condition, manner, and duration that the can walk, sit, or stand, as compared to the average person. Moore v J.B.Hunt Transport, Inc., 221 F. 3d 944 (7th Cir. 2000).  Individualized assessment is necessary. Focus on how the impairment affects the individual.

Evidence of a hospital admission is evidence of both the substantial limited nature of a presently existing impairment and a record of impairment.  Mr. Stoffan's evidence of a disability with his back injury and other health issues are well documented by Dr. Mason and Dr. Brennan. Mr. Stoffan's disabilities cause severe and sometime debilitating pain that impacts a number of his major life activities such as sitting, concentrating, standing and walking. Plaintiff was diagnosed with back injury in 2005 caused by a car accident. The severity of the injuries to his back caused him to endure a spinal fusion surgery to try to alleviate the pain.  To this date, Mr. Stoffan continues to routinely see a pain management physician, Dr. Brennan.  Evidence of the impact the pain causes Mr. Stoffan is shown by the ̶pain̶ ̶management̶ ̶medication̶ ̶that̶ ̶is̶ ̶prescribed̶ ̶to̶ ̶alleviate̶ ̶the̶ ̶pain̶ ̶(see̶ ̶exhibit̶ ̶complaint̶). When he takes his pain medication he has a need to go home and lie down. He does this when his pain is too severe for him to tolerate and stay at work.  Pain limits his ability to walk, concentrate, sit in one place for extended periods of time. The pain in his back affected his ability to  walk, concentrate, sit in one place for extended periods

18

of time.

**Request for Accommodation**:

Under the ADA, plaintiffs bear "the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable" Steward v New Chrysler, 415 Fed. Appx. 632, 642 (6th Cir. 2011){internal cites omitted} "In order for an accommodation to be reasonable, it should be necessary in light of the plaintiffs known physical limitations." Johnson v Cleveland City Sch. Dist., 344 Fed. Appx. 104 (6th Cir. 2009). Mr. Stoffan requested as an accommodation that he be allowed to leave the job and to take his pain medication and go home to rest or to go to physician's appointments. Mr. Stoffan requested not to be transferred to the Stamford garage. His requests were reasonable for a number of reasons. First, Plaintiff states that he experiences pain and would have to take medicine to treat it. Second, he stated that he had difficulty driving to Stamford because of the long commute aggravated his back pain. The history of taken by Dr. Brennan describes Mr.Stoffan's symptom of lower back pain and limiting his ability to sit and stand, especially for long periods of time. He also states that Mr. Stoffan's sleep is disrupted. His pain has a significant impact on his professional and personal life. (Exhibit 5a)

Mr. Stoffan's request for accommodations to go home and take his pain medication, or not to be transferred to Stamford was reasonable because he had to take a number of pain medications. Sometimes the pain medication affected his thinking and driving (Stoffan deposition p. 170, line 25 to 172, line 19). If he had to drive long distances it would make his back hurt. (Stoffan deposition p. 172, line 16  to 172, line 19). Mr. Stoffan's requests were reasonable because of safety issues. Safety was important to SNET. (Stoffan deposition p. 180, lines 1 to 10). The burden on other individual employees were minimal because there were a number of

19

other managers in the company.

**b. Plaintiff will establish that Mr. Chantlos harbored discriminary animus toward plaintiff based on his disability**. Chantlos assigned Stoffan to the Stamford garage, a much longer commute, over Stoffan's objection. (Stoffan deposition p. 167, line 19 to p. 168, line 7 ) (Exhibit 5d). "Because writings directly supporting a claim of discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Gallo v Prudential Residential Servs., Ltd P'ship, 22 F. 3d 1219, 1224 (2d. Cir. 1994). Chantlos instituted an inquiry regarding Stoffan's prescription use by inquiring with his prior manager if he followed the proper company notification procedure. (Stoffan affidavit para.9) (Exhibit 3a)  One has to prove a state of mind or mental attitude through circumstantial evidence, such as by conduct or by comments. Chantlos increased Mr. Stoffan hours and created needless job stress with the Stamford garage assignment. Evidence of Dan Chantlos' misdeeds is in Mr. Stoffan's medical records which document increased job stress, and an overload of working hours. (Exhibit 5b, 11, 6a, 6b) The situation was created after Mr. Stoffan's transfer to Dan Chantlos' team.

**c. Progressive discipline was used constantly through-out plaintiff's career and was required pursuant to company internal policies**.  SNET had a policy of progressive discipline, and consistently used such policies on Mr. Stoffan along with other employees. (Exhibit 3b). Chantlos admits in his declaration filed with this motion that he conferred with Mr. McNamara to discuss, . . . "what level of discipline to impose." (Chantlos declaration para. 19). "Because

20

writings directly supporting a claim of discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Gallo at 1224.

**2. SNET had an illegitimate, illegal and discriminatory business reason for terminating plaintiff's employment.:** The defense claims that the alleged theft of tools was enough of a reason to terminate the plaintiff. However, SNET's own policy on theft states that theft is a terminable offense, absent mitigating circumstances. (Exbibit 1c) This policy is still currently applied to the first level managers (Exhibit 7b, paragraph 15). Mr. Stoffan gave an explanation for leaving the tools in his Uncle's barn due to inclement weather, and then forgot about them. In the last few years of Mr. Stoffan's employment, he had to manage some significant health issues, and symptoms of severe pain. These facts were not given any consideration.

In addition, Mr. Stoffan had to struggle to survive a pre-determination by his manager, Dan Chantlos, to create a work environment so hostile that the stress of it got him a referral to the emergency room by his primary care physician. (Exhibit 11) Dan Chantlos is obsessed with the performance numbers of his U-Verse department, and he will do anything to ensure they don't get hurt. (Exhibits 8a, 8b, 8c, 8d) He will remove anyone that threatens his U-Verse department's performance levels. Mr. Stoffan at the very least was due the progressive discipline that was ongoing company policy, not termination.  It seems quite peculiar that a company with an inventory policy that gives two weeks prior notice, would seek to locate a few bags of minor tools on a moments notice on an anonymous telephone call. (Stoffan deposition p. 245, line 2 to p.250, line 18) .

**3. Defendant ignores and misconstrues plaintiff's request for accommodation.**

As previously, stated SNET was aware of Mr. Stoffan's disabilities and his requests for accommodation. We have three on the record. First, is the statement of Butch Haxhi documenting Mr. Stoffan's request to leave work to take his pain medication. (Exhibit 3) Second, Mr. Stoffan's request to his manager Dan Chantlos to not be transferred to the Stamford garage because the long drive caused him pain. (Stoffan deposition p. 167, line 19 to p. 168, line 7; p. 172, line14 to line 20) Third, Mr. Stoffan had made requests to go home sick and to the doctor's appointments but he had to keep his cell phone on and take calls from the technicians in the field. That was company policy. (Stoffan affid. para. 11). Under the ADA, plaintiffs bear "the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable" Steward v New Chrysler, 415 Fed. Appx. 632, 642 (6th Cir. 2011){internal cites omitted}.

**C. Plaintiff's intentional infliction of emotional distress claim does not fail, because the record has evidence of extreme and outrageous conduct**.

On August 1, 2008, Dr. Masone referred Mr. Stoffan to the emergency room for treatment. Dr. Masone's referral occurred after listening to Mr. Stoffan describe his work environment. Dr. Masone felt in his professional capacity that Mr. Stoffan was in deep distress. (Masone deposition p. 76, line 1 to line 23) Mr. Stoffan with overflowing emotion described the mistreatment and stress he was suffering from on account of his job. Mr. Chantlos' treatment of Mr. Stoffan was extreme to the point of causing Mr. Stoffan's primary care physician, Dr. Masone, to refer him to ~~the emergency room~~. Conduct "that is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly

intolerable in a civilized society, and is of a nature that is especially calculated to cause and does cause, mental distress of a very serious kind." Miner v Town of Cheshire, 126 F. Supp. 2d 184, 194 (D.Conn. 2000) (citations omitted) All persons have different levels of stress tolerance. Someone like a person in Mr. Stoffan's situation is more vulnerable to levels of stress because of the complications with his health. Mr. Stoffan's health problems cause him to struggle to function on a routine basis from day to day. He does not function as easily as an average person. He is in constant pain, and is taking a number of medications. Add to that a number of unreasonable demands such as working 60 hours a week, working 23 and 37 days straight in a row {Exhibits 5b, Masone deposition p. 76, lines 16 to 23} without a break, adding more crew, and responsibilities on someone you know is having trouble functioning and coping is atrocious. Mr. Chantlos' demanding behavior would be abusive and have an adverse effect on the average person. That clearly is a form of bullying, and it rises to extreme and outrageous behavior because it is done to someone who is knowingly disabled. This type of abusive behavior is intolerable in a civilized society. Chantlos' behavior caused ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ which was of a very serious nature because his physician felt the need to refer him to the hospital for emergency care.

**D. Plaintiffs's breach of contract claims should not fail because Plaintiff was not an at-will employee, therefore good cause was required for termination.**

In the case at hand there are at minimum two writings that control the parties employment relationship. The first writing was the initial contract which started the employment relationship, (Exhibit 1a), as a temporary one which evolved into long term. The long term relationship was

within the contemplation of the parties because the agreement says so.  The second writing
(Exhibit 1b) evidences a continued relationship between the parties even after Mr. Stoffan had left
SNET employment.

In Connecticut, an employer and employee have an at-will employment relationship in the
absence of a contract to the contrary. Employment at will grants both parties the right to terminate
the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal
quotation marks omitted.) Thibodeau v. Design Group One Architects, LLC, supra, 260 Conn. at
697-98. Employment contracts of indefinite duration are terminable at the will of either party.
Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629, 153 A.2d 426 (1959).  The second writing
creates a legal obligation to Mr. Stoffan which continues long after he leaves SNET's
employment. Mr. Stoffan understood that he had a responsibility to SNET, and that SNET had
responsibilities to him. (Stoffan deposition p. 280, line 18 to p. 282, line 19).  To determine what
the intent was between Mr. Stoffan and SNET with these writings is a question for the jury.

Typically, an implied contract of employment does not limit the terminability of an
employee's employment but merely includes terms specifying wages, working hours, job
responsibilities and the like. Thus, "[a]s a general rule, contracts of permanent employment, or for
an indefinite term, are terminable at will." D'Ulisse-Cupo v. Board of Directors of Notre Dame
High School, 202 Conn. 206, 211 n. 1, 520 A.2d 217 (1987).

Under Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. at 15,
662 A.2d 89, the court found that "pursuant to traditional contract principles . . .the default rule of
employment at will can be modified by the agreement of the parties. Id. "Accordingly, to prevail
on the ... count of his complaint [that] alleged the existence of an implied agreement between the

24

parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that [the

employer] had agreed, either by words or action or conduct, to undertake [some] form of actual

contract commitment to him under which he could not be terminated without just cause. [Id. at

212 n. 2, 520 A.2d 217]; Therrien v. Safeguard Mfg. Co., [180 Conn. 91, 94-95, 429 A.2d 808

(1980) ].... Absent a statutory warranty or definitive contract language, the determination of what

the parties intended to encompass in their contractual commitments is a question of the intention

of the parties, and an inference of fact. As an inference of fact, it is not reversible [error] unless

the [trier of fact] could not reasonably have arrived at the conclusion that it reached. Bead Chain

Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75, 439 A.2d 314 (1981)." (Citations

omitted; internal quotation marks omitted.) Coelho v. Posi-Seal International, Inc., 208 Conn.

106, 112-13, 544 A.2d 170 (1988); see also Finley v. Aetna Life & Casualty Co., 202 Conn. 190,

198, 520 A.2d 208 (1987) (whether employment manual becomes term of implied contract of

employment is question of fact). What these documents establish as the intent of the parties, if

there is a requirement of dismissal solely for cause, is a question of fact for the jury.

In Gaudio v. Griffin Health Services Corp., 733 A.2d 197; 249 Conn. 523 (Conn. 1999),

the employee manual did not contain express contract language that definitively states either that

employees are at-will or that they may be terminated only for just cause. "In the absence of [such]

language ... the determination of what the parties intended to encompass in their contractual

commitments is a question of the intention of the parties, and an inference of fact. Bead Chain

Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75; 439 A.2d 314 (1981)." (Internal

quotation marks omitted.) Finley v. Aetna Life & Casualty Co., 202 Conn. 190 at 199, 520 A.2d

208. Because it is an inference of fact, determining the intent of the parties is within the province

25

of the jury: it is " 'the raison d'etre of the jury system.' " Coelho v. Posi-Seal International, Inc.,

208 Conn. 106, 113; 544 A.2d 170 (1988); accord Torosyan v. Boehringer Ingelheim

Pharmaceuticals, Inc., supra, 234 Conn. at 15; 662 A.2d 89; Finley v. Aetna Life & Casualty Co.,

supra, at 199, 520 A.2d 208; Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579,

613, 292 N.W.2d 880 (1980); Pine River State Bank v. Mettille, 333 N.W.2d 622, 628

(Minn.1983); Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 465-66, 443 N.E.2d 441, 457

N.Y.S.2d 193 (1982). Accordingly, the reviewing court found that trial court correctly submitted

to the jury the task of determining the contours of the parties' intentions.


**WHEN TERMINATION VIOLATES PUBLIC POLICY**: Even if Mr. Stoffan is found

to be an at-will employee his termination violates public policy, and falls into the public policy

exception.

Although, "[a]s a general rule, contracts of permanent employment, or for an indefinite

term, are terminable at will." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,

202 Conn. 206, 211 n.1, 520 A.2d 217 (1987). That is, unless "the discharge contravenes a clear

mandate of public policy"; Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474;427 A.2d

385 (1980); or the parties expressly or impliedly agree otherwise; Torosyan v. Boehringer

Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 15-16, 662 A.2d 89 (1995); Coelho v. Posi-Seal

International, Inc., 208 Conn. 106, 116, 544 A.2d 170 (1988); or a party is estopped by his

representations from terminating an employment contract; Stewart v. Cendant Mobility Services

Corp., 267 Conn. 96; 837 A.2d 736 (2003).

Explanation of a violation of public policy in a wrongful discharge situation is clearly

defined in Danny v. Laidlaw Transit Services, Inc., 165 Wn.2d 200, 192 P.2d 128 (2008).

Ramona Danny worked at Laidlaw Transit Services from February 1997 until December 2003, when she was terminated. During her entire term of employment, Ms. Danny and her five children were subjected to severe physical abuse at the hands of her husband. In February 2003, Ms. Danny fled her home after a beating, but was forced to leave her children behind. In June 2003, she told her immediate supervisor of the domestic violence that was part of her life. Two months later she requested time off, so she could remove her children from the abusive situation that was their home. Her manager initially refused because she was working on an important project that was time-sensitive. A short time after this refusal, Ms. Danny's husband beat her 13-year-old son so badly that he had to be hospitalized. Ms. Danny immediately removed all of her children out of the home and joined them in a shelter for victims of domestic abuse. Her employer granted her a two-week paid leave of absence. During that time Ms. Danny conferred with the police about protection for her and her children and assisted her son in the prosecution of her husband for assault. She received services from the local domestic abuse agency, including transitional housing, counseling, and health services.

One month after her return to work, she was demoted and lost her supervisor's position. Two months after her demotion she was terminated, allegedly for falsification of payroll records. Ms. Danny then filed a complaint in federal court in Washington alleging that she had been terminated because of domestic abuse in violation of public policy. Her employer moved to dismiss the complaint and the district court certified the question to the Washington Supreme Court.

As the Washington Supreme Court noted, an at-will employee may be terminated for any

27

reason, but not for a reason that violates public policy. To prevail in such a case, plaintiff must establish the existence of a clear public policy. That public policy can be found in a constitutional, statutory, or regulatory provision or scheme.

The Washington Supreme Court noted that there had been numerous expressions of the legislature's recognition of societal costs of domestic abuse and multiple examples of the legislature's attempt to protect victims and reduce its occurrence. Those efforts include supporting victims seeking to escape their abusers and emphasizing the importance of successful prosecution of abusers. Among those examples is a Washington statute requiring employers to grant "reasonable leave" for victims of domestic violence. Thus the Washington Supreme Court held that terminating an employee because the employee is a victim of domestic abuse is a termination in violation of public policy. In addition, the Court held that not only is a victim of domestic abuse protected because of her status as a victim, but the law also protects conduct, such as taking time off, to deal with the domestic abuse. However, the Court did limit its holding. It reasoned that a termination is only a violation of public policy if it directly relates to that public policy or was necessary for the enforcement of that policy. In the case at hand, Mr. Stoffan was discharged in violation of the ADA which is in direct violation of public policy.

The tort of wrongful discharge is a "narrow" exception to the general rule of at-will employment that allows an employee to sue for damages when the dismissal was for a "demonstrably improper reason, a reason whose impropriety is derived from some important violation of public policy." Carbone v. Atlantic Richfield Co., 204 Conn. 460, 466-67, 528 A.2d 1137 (1987).

28

A cause of action for wrongful discharge of an at-will employee is permissible where the reason for the discharge involved impropriety " derived from some important violation of public policy ." Sheets v. Teddy's Frosted Foods, Inc., supra, 179 Conn. at 475. In order to determine the contours of the public policy exception, the court looks to see " whether the plaintiff has ... alleged that his discharge violated any explicit statutory or constitutional provision ... or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 77, 700 A.2d 655 (1997). The public policy exception " is a narrow one that is only to be invoked when the reason for [the employee's] discharge ... involves impropriety derived from some important violation of a public policy ." (Internal quotation marks omitted.) Id., at 79.

If a plaintiff does not allege that the defendant violated any particular statutory or constitutional provision. The task before the court is to determine whether the plaintiff's invocation of the public policy is embodied in his/her complaint, and if so, if it is an important public policy sufficient to warrant an exception to the at-will employment doctrine. Whether the public policy implicated is sufficient to sustain a wrongful termination claim is a question of law. Faulkner v. United Technologies Corp., supra, 240 Conn. 576 at 588; 693 A.2d 293 (1997

Our Supreme Court has " recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception." Thibodeau v. Design Group One Architects, LLC, supra, 260 Conn. at 698-99. Public policy may derive from federal law as well as from state law. Faulkner v. United Technologies Corp., 240 Conn. 576 at 585-86; 693 A.2d 293 (1997) ("claims brought pursuant to the public policy limitation on the at-will employment doctrine can be predicated on the violation of public

policy expressed in a federal statute"). " [W]hen there is a relevant ... statute [the court] should not ignore the statement of public policy that it represents." (Internal quotation marks omitted.) Parsons v. United Technologies Corp., supra, 243 Conn. at 79.

Under the Sheets doctrine, a plaintiff must demonstrate a connection or nexus between his discharge and the alleged violation of public policy. Sheets v. Teddy's Frosted Foods, Inc., supra, 179 Conn. at 471. It is not enough for the plaintiff to show that the employer was engaged in activities or conduct that violated public policy. As reflected by the language of Sheets, the improper termination must be derived from some important violation of public policy and, thus, the plaintiff must show that his discharge was because of, or related to, that public policy violation. Id. It is not sufficient for a plaintiff to prove that his discharge had the effect of undermining public policy. Battista v. United Illuminating Co., 10 Conn.App. 486, 497, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987) (" for a discharge to be actionable, there must be more than an incidental effect on public policy"). Rather, the plaintiff must plead and prove that his dismissal occurred for a reason that was in violation of public policy. See Morris v. Hartford Courant Co., 200 Conn. 676, 680, 513 A.2d 66 (1986).

A plaintiff need not explicitly cite a particular public policy; it is sufficient that the facts alleged amount to the violation of an important, clearly defined public policy. Faulkner v. United Technologies Corp., supra, 240 Conn. at 588.

A review of the medical and corroborating evidence clearly demonstrates that Mr. Stoffan had a disability that was on record with his employer, SNET. Although he realizes that forgetting the property at his Uncle's does not look good, Mr. Stoffan denies that he intended to steal any property. Therefore, Mr. Stoffan has, as stated in his complaint, the protections afforded to him

30

pursuant to the public policy of the American with Disabilities Act, as amended.  If you review,

Mr. Stoffan's employment record, which his performance was exemplary, up until he was

transferred to Dan Chantlos's U-Verse department.  And contemplate why Dan Chantlos

questioned Mr. Stoffan about the proper disclosure of his medications to the company in a

suspiciously critical and probing manner. It his clear that the termination was wrongful.

E.  **Whether there is a genuine issue of material fact concerning plaintiff's unjust
enrichment claim**.

### 1. Legal Standard:

However denominated, a claim for unjust enrichment has broad dimensions. "Unjust

enrichment applies wherever justice requires compensation to be given for property or services

rendered under a contract, and no remedy is available by an action on the contract. 5 Williston,

Contracts (Rev. Ed.)§ 1479. A right of recovery under the doctrine of unjust enrichment is

essentially equitable, its basis being that in a given situation it is contrary to equity and good

conscience for one to retain a benefit which has come to him at the expense of another. Franks v.

Lockwood, 146 Conn. 273, 278, 150 A.2d 215 [1959]; Schleicher v. Schleicher, 120 Conn. 528,

534, 182 A. 162 [1935]. Connecticut National Bank v. Chapman, 153 Conn. 393, 399, 216 A.2d

814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust,

equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where

the benefit of the doctrine is  claimed, to examine the circumstances and the conduct of the parties

and apply this standard. Cecio Bros., Inc. v. Greenwich, [supra, 156 Conn. at 564-65, 244 A.2d

404]." (Internal quotation marks omitted.) Providence Electric Co. v. Sutton Place, Inc., 161

Conn. 242, 246, 287 A.2d 379 (1971); Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire

Co., 231 Conn. 276, 282, 649 A.2d 518 (1994). " 'Unjust enrichment is, consistent with the

principles of equity, a broad and flexible remedy. Cecio Bros., Inc. v.Greenwich, [supra, at 564,

244 A.2d 404].' " Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., supra, at 283,

649 A.2d 518.

Mr. Stoffan worked for the bonus throughout 2009. His contributions as part of a team

with other SNET employees allowed SNET to meet its goals for the year 2009. Mr. Stoffan

clearly understood what the incentive program meant to the company, and to him personally

because he had received bonuses in the past along with the Key Contributor Award in 2007. He

understood SNET would be paying him a bonus in early 2010. (Stoffan deposition p. 156, line 20

to p. 158, line 16). He received an email from SNET confirming it. Mr. Stoffan earned $7,429.00

(Stoffan deposition, p. 160, line 9 to p. 162, line 4).

### 2. Plaintiff claims he is entitled to his bonus after he was terminated .

SNET, over several years, had established a variety of programs to encourage a high level

of employee performance created incentives for employees to receive bonus payments. This

pattern was repeated year after year.  The employees would work hard to attain the company

goals. The employees, such as Mr. Stoffan, were notified that their bonus was earned after the

calculations for the year were made. Notice of the future payment of such bonus was confirmed

via email, to Mr. Stoffan prior to his termination. Mr. Stoffan relied on that email communication

as confirmation of future receipt of the bonus. Under these circumstances, it is appropriate for

Mr. Stoffan to recover his unpaid bonus according to a fairness and equitable standard.

We note, additionally, that the doctrine of unjust enrichment is grounded in the theory of restitution, not in contract theory. As this court stated in Burns v. Koellmer, 11 Conn.App. 375, 527 A.2d 1210 (1987), " [b]oth unjust enrichment and quantum meruit are doctrines allowing recovery on the theory of restitution, that is, the restoration to a party of something of which he was deprived because of the unjust enrichment of another at his expense. See G. Palmer, 1 Restitution (1978) § 1.1 ... Broadly speaking, the availability of restitution is dependent upon unjust enrichment, that is, upon a perceived injustice because one party has benefitted at the expense of another.  SNET has benefitted from the diligent effort of Mr. Stoffan to achieve high performance to the best of his ability.  It would unjust for SNET to retain the reward they promised him for his work.

**F.      Plaintiff, Alana Stoffan's loss of consortium claim does not fail because there is a legally sufficient intentional infliction of emotional distress claim**.

The evidence put forth at this time clearly demonstrates the plaintiff suffered intentional infliction of emotional distress. The court only has to review exhibits and the deposition testimony of Dr. Masone to see that Mr. Stoffan clearly suffered intentional emotional distress at the hands of his employer.  His wife was a witness to his suffering as indicated in the St. Vincent's medical center emergency room records (Exhibit 11).

**CONCLUSION**:

It is quite peculiar that a dedicated employee, making a generous salary, with years with of experience with SNET would be tossed out of a job for misplacing a few bags of miscellaneous tools. All of his stress and turmoil began after he was transferred to the U-Verse department with

33

a new manger who had to tolerate his limitations caused by his disabilities. Mr. Stoffan has

presented ample evidence to reach a jury on his discrimination claim and other claims. Therefore,

SNET's motion for summary judgment should be denied.


RESPECTFULLY SUBMITTED:

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

This is to certify that on _____7/12/13_____ , a copy of the foregoing was filed electronically and served by mail on any counsel and pro se parties of record unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing.  Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

WAYNE STOFFAN            :
ALANA STOFFAN            :
         PLAINTIFFS    :
      V              :     Case No.: 3:11-cv-01630-AWT
                    :
THE SOUTHERN NEW ENGLAND  :
TELEPHONE COMPANY     :     July 12, 2013
        DEFENDANT     :
                    :
                    :    **MOTION FOR EXTENSION OF TIME**
                    :

-------------------------------------------------------

     Pursuant to Fed. R. Civ. P. 6 and D. Conn. Local Rule 7(b), the plaintiffs, Wayne and

Alana Stoffan, hereby request another three (3) days of an extension of time up to and including

Monday, July 15, 2013, to file affidavits, exhibits, motion to seal, and Fed. R. Civ. Proc. 56a 2

response concerning the defendant's motion for summary judgment (documents 135/136/137).

The current due date for a response is June 28th. The undersigned counsel filed a second and

third extensions to this date which have not been ruled upon, to which the defense has objected.

The defense was contacted regarding this motion but no response was received in time.

     Counsel for the plaintiffs has been diligently working to complete the responsive

documents to oppose defendant's motions (Documents 135/136/137). However, all the numerous

documents that are needed to prepare are taking vast amounts of time, more than the undersigned

counsel anticipated.  Therefore, the undersigned respectfully requests a three (3) day extension of

time so that she may adequately finish preparing the documents, and organizing the exhibits to

oppose the motion for summary judgment on behalf of her clients.


**ORAL ARGUMENT IS NOT REQUESTED**

This the plaintiff's forth motion for a brief extension of time.

WHEREFORE, the plaintiffs Wayne and Alana Stoffan, respectfully move for a three (3) day extension of time, or up to and including July 15th, 2013, to finishing filing all the documents to support their response to defendant's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED,**

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on _____7-12-13_____, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE STOFFAN | : | |
| ALANA STOFFAN | : | |
| PLAINTIFFS | : | |
| V | : | Case No.: 3:11-cv-01630-AWT |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | July 8, 2013 |
| DEFENDANT | : | |
| | : | |
| | : | **MOTION FOR EXTENSION OF TIME** |
| | : | |

-------------------------------------------------------

Pursuant to Fed. R. Civ. P. 6 and D. Conn. Local Rule 7(b), the plaintiffs, Wayne and

Alana Stoffan, hereby request another four (4) days of an extension of time up to and including

Friday, July 12, 2013, to file a response concerning the defendant's motion for summary

judgment (documents 135/136/137). The current due date for a response is June 28th. The

undersigned counsel filed a second extension to this date which has not been ruled upon, to

which the defense has objected.

Counsel for the plaintiffs has been diligently working to complete the responsive

documents to oppose defendant's motions (Documents 135/136/137). However, all the

documents that are needed to prepare are taking vast amounts of time, more than the undersigned

counsel anticipated. Therefore, the undersigned respectfully requests a four (4) day extension of

time so that she may adequately finish preparing the documents, and organizing the exhibits to

oppose the motion for summary judgment on behalf of her clients.

**ORAL ARGUMENT IS NOT REQUESTED**

The undersigned contacted the defendant's counsel for their position on this extension and defense counsel **objects** to the extension.  I also inquired regarding counsel's vacation schedule to ascertain if that was an impediment to their approval to the extension of time, to which I had no response.   This the plaintiff's third motion for extension of time.

WHEREFORE, the plaintiffs Wayne and Alana Stoffan, respectfully move for a four (4) day extension of time, or up to and including July 12th, 2013, to file their response to defendant's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED,**

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on _____7-8-13_____, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE STOFFAN | : | |
| ALANA STOFFAN | : | |
| PLAINTIFFS | : | |
| V | : | Case No.: 3:11-cv-01630-AWT |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | July 8, 2013 |
| DEFENDANT | : | |
| | : | |
| | : | **MOTION FOR EXTENSION OF TIME** |
| | : | |

--------------------------------------------------------

Pursuant to Fed. R. Civ. P. 6 and D. Conn. Local Rule 7(b), the plaintiffs, Wayne and

Alana Stoffan, hereby request another four (4) days of an extension of time up to and including

Friday, July 12, 2013, to file a response concerning the defendant's motion for summary

judgment (documents 135/136/137). The current due date for a response is June 28th. The

undersigned counsel filed a second extension to this date which has not been ruled upon, to

which the defense has objected.

Counsel for the plaintiffs has been diligently working to complete the responsive

documents to oppose defendant's motions (Documents 135/136/137). However, all the

documents that are needed to prepare are taking vast amounts of time, more than the undersigned

counsel anticipated. Therefore, the undersigned respectfully requests a four (4) day extension of

time so that she may adequately finish preparing the documents, and organizing the exhibits to

oppose the motion for summary judgment on behalf of her clients.

**ORAL ARGUMENT IS NOT REQUESTED**

The undersigned contacted the defendant's counsel for their position on this extension and defense counsel **objects** to the extension.  I also inquired regarding counsel's vacation schedule to ascertain if that was an impediment to their approval to the extension of time, to which I had no response.   This the plaintiff's third motion for extension of time.

WHEREFORE, the plaintiffs Wayne and Alana Stoffan, respectfully move for a four (4) day extension of time, or up to and including July 12th, 2013, to file their response to defendant's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED,**

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on _____ 7-8-13 _____, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WAYNE STOFFAN | : |
| ALANA STOFFAN | : |
| PLAINTIFFS | : |
| V | : Case No.: 3:11-cv-01630-AWT |
| | : |
| THE SOUTHERN NEW ENGLAND | : |
| TELEPHONE COMPANY | : July 1, 2013 |
| DEFENDANT | : |
| | : |
| | : |

-------------------------------------------------------

# REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS'
## MOTION FOR EXTENSION OF TIME

Plaintiff responds to defendant's, Southern New England Telephone Company ("SNET"), objection #141 to plaintiff's motion for extension of time, dated June 27, 2013 (Doc. No. 140){Motion for Extension of Time #140 inadvertently was not designated as NON-ARGUABLE}.

When plaintiff made the inquiry for the second extension of time to complete the objection to the motion for summary judgment, defense counsel's only position was for plaintiff to agree to their motion to allow them to disclose an expert at this late date. Only then would defense counsel agree to plaintiffs' motion for a ten (10) day extension of time. To plaintiffs' counsel these were two different procedural issues which had no relation to each other, therefore she had to file this non-consent motion.

In addition, each time plaintiffs' counsel made her requests, defense counsel did not mention anything about her concerns pertaining to her family vacations or the timing issue in responding to the plaintiffs' memorandum in opposition. Defense counsel did not communicate these concerns with the undersigned counsel, therefore no discussions were had.

**ORAL ARGUMENT IS NOT REQUESTED**

1

WHEREFORE, the plaintiffs' respectfully move that their motion for a ten (10) day extension of time up until July 8th, be granted, and defense counsel's time to respond to plaintiff's memorandum of law in opposition to the motion for summary judgment be tailored to accommodate her vacation schedule.

Plaintiff's Attorney:

/s/ *Laurel Fedor*

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

2

## CERTIFICATE OF SERVICE

This is to certify that on _____7-1-13_____ , a copy of the foregoing was filed

electronically and served by mail on any counsel and pro se parties of record unable to accept

electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the

court's electronic system or by mail to anyone unable to accept electronic filing as indicated on

the Notice of Electronic filing. Parties may access this filing through the Court's CM/ECF

system.

Plaintiff's Attorney:

/s/ *Laurel Fedor*

_____

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

3

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE STOFFAN | : | |
| ALANA STOFFAN | : | |
| PLAINTIFFS | : | |
| V | : | Case No.: 3:11-cv-01630-AWT |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | June 27, 2013 |
| DEFENDANT | : | |
| | : | |
| | : | **MOTION FOR EXTENSION OF TIME** |
| | : | |

-------------------------------------------------------

Pursuant to Fed. R. Civ. P. 6 and D. Conn. Local Rule 7(b), the plaintiffs, Wayne and

Alana Stoffan, hereby request a ten (10) day extension of time up to and including Monday, July

8, 2013, to file a response concerning the defendant's motion for summary judgment (documents

135/136/137). The current due date for a response is June 28th.

Counsel for the plaintiffs requires additional time to file a response due to the need to file

motions to seal medical record exhibits pursuant to local rule 5(e)(4)(a). In addition, defendant

has filed exhibits that number approximately 463 pages, and has filed a Rule 56(a)(1) statement

that contains 60 separately numbered paragraphs that must be thoroughly responded to with cites

to one or more of the six deposition transcripts in this case and/or the hundreds of pages of

exhibits. The undersigned respectfully requests the ten (10) day extension of time so that she

may adequately prepare an opposition to the motion for summary judgment on behalf of her

clients.

The defendants' counsel **has not** agreed to the extension. This the plaintiff's second

motion for extension of time.

WHEREFORE, the plaintiffs Wayne and Alana Stoffan, respectfully move for a ten (10) day extension of time, or up to and including July 8th, 2013, to file their response to defendant's Motion for Summary Judgment.

**RESPECTFULLY SUBMITTED,**

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on _____ 6-27-13 _____, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE STOFFAN | : | |
| ALANA STOFFAN | : | |
|        PLAINTIFFS | : | |
|     V | : | Case No.: 3:11-cv-01630-AWT |
| | : | |
| THE SOUTHERN NEW ENGLAND | : | |
| TELEPHONE COMPANY | : | June 4, 2013 |
|        DEFENDANT | : | |
| | : | |
| | : | **MOTION FOR EXTENSION OF TIME** |
| | : | |

-------------------------------------------------------

Pursuant to Fed. R. Civ. P. 6 and D. Conn. Local Rule 7(b), the plaintiffs, Wayne and

Alana Stoffan, hereby request a two week extension of time up to and including Friday, June 28,

2013, to file a response concerning the defendant's motion for summary judgment (documents

135/136/137). Counsel for the plaintiffs requires additional time to file a response due to the

length of the supporting memorandum, and the number exhibits needed to review.

The defendants' counsel has agreed to the extension. This the plaintiff's first motion for

extension of time.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on _6 - 4 - 13_ , a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Plaintiff's Attorney:

Laurel Fedor, Esq.
Taylor & Fedor
215 Main Street, Suite 300
Westport CT 06880
Tel: (203)227-9328
Fax (203)227-3800
Fed. Bar Ct 12821
Email:fedoratty@sbcglobal.net